**Charles E. WILLIS,**
**Petitioner-Appellant,**

v.

**Lansome NEWSOME, Warden,**
**Respondent-Appellee.**

No. 83-8842.

United States Court of Appeals,
Eleventh Circuit.

Sept. 24, 1985.

Gerald P. Word, Carrollton, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Atlanta, Ga., for respondent-appellee.

Before RONEY and HILL, Circuit Judges, and PITTMAN *, District Judge.

PER CURIAM:

Appellant Charles E. Willis, a state prisoner convicted of murdering his son, appeals a district court decision denying his motion to order exhumation of his son's body for purposes of performing an autopsy and a district court decision denying his petition for writ of habeas corpus. We affirm both decisions.

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. Appellant also claimed he had been denied due process because (1) the state refused to stipulate to certain polygraph evidence; and (2)

## I. FACTS

Apparently, appellant was convicted of murder primarily on the basis of the testimony of his son's wife, the only eyewitness. She testified that appellant came to his son's home to get his deer rifle. She stated that she got the rifle for appellant and put it in his car. She then saw appellant shoot his son with a handgun. Appellant denied shooting his son.

No handgun was ever found or linked with the killing. The only weapon introduced at trial was appellant's deer rifle. No autopsy was ever performed. No bullet or bullet fragments were ever found. The medical examiner was unable to identify the caliber or type of gun used.

Appellant was arrested the evening of the shooting. A deputy sheriff testified at trial that, following appellant's arrest, appellant said his son had " 'put some bad stuff on me' " and that " 'it was either him or me.' " Also introduced at trial were the results of a trace metal test performed on appellant. The test showed that appellant had fired a gun on the day of his son's shooting.

Appellant was tried twice for the murder of his son. The first trial ended in a mistrial, since the jury was deadlocked. Appellant was convicted at the second trial.

Appellant appealed his conviction to the Georgia Supreme Court alleging, among other things, ineffective assistance of counsel. The Supreme Court affirmed his conviction. He brought this habeas corpus petition in federal court, claiming, *inter alia*, that he had been denied effective assistance of counsel at trial in violation of his sixth amendment right to counsel.[1] Specifically, he claimed his attorneys were ineffective because they: (1) failed to have an autopsy performed on the victim and to obtain ballistics evidence therefrom; (2) failed to object to testimony concerning the

the court admitted into evidence the results of an intoximeter test. The district court rejected these claims. On appeal, he does not challenge the district court's decision with respect to these claims.

trace metal test; and (3) failed to object to testimony about appellant's statements to police following his arrest. In relation to his claim based on the failure to seek an autopsy and ballistics evidence, appellant moved the court to order exhumation of the victim's body so that an autopsy could now be performed. The district court denied the motion. It also denied all his claims of ineffective assistance.

## II. DISCUSSION

### A. *Denial of Motion to Order Exhumation*

■ In federal habeas corpus actions, the parties are entitled to use discovery procedures available under the Federal Rules of Civil Procedure only with the court's permission. 28 U.S.C. fol. § 2254 rule 6. In *Harris v. Nelson,* 394 U.S. 286, 290, 89 S.Ct. 1082, 1086, 22 L.Ed.2d 281 (1969), the Supreme Court set forth the standard for exercise of the court's discretion in granting such discovery requests:

> We do not assume that courts in the exercise of their discretion will pursue or authorize pursuit of all allegations presented to them.... But where specific allegations before the court show reasons to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

Appellant maintains exhumation was necessary to establish his ineffective assistance of counsel claim based on his counsel's failure to have an autopsy performed. According to appellant, such an autopsy could have revealed whether the victim was shot with a rifle or a handgun. If it showed that a rifle, not a handgun, was the murder weapon, then, alleges appellant, the testimony of his daughter-in-law, the

government's key witness, would be contradicted. Appellant maintains this would undermine the government's case because there was no evidence to connect him with the rifle. He argues that, because part of the test for ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is that the defendant be "prejudiced" by his lawyer's inadequate representation, his ineffective assistance of counsel claim cannot be decided without determining whether the autopsy would have shown that a rifle was the murder weapon and thus have revealed evidence favorable to the defense.

We do not agree with appellant's contention that his ineffective assistance claim cannot be decided without exhuming the body. Even if an autopsy were to reveal that the murder weapon was a rifle and even if that were sufficient to establish "prejudice" within the meaning of *Strickland v. Washington,*[2] he still could not succeed in his ineffective assistance claim since he could not establish that his counsel failed to render reasonably effective assistance, which is the other part of the *Strickland v. Washington* test.

■ To determine whether counsel rendered reasonably effective assistance, the court is to consider the totality of the circumstances. *Adams v. Balkcom,* 688 F.2d 734, 738 (11th Cir.1982). Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course. *Baldwin v. Blackburn,* 653 F.2d 942 (5th Cir.1981). However, certain defense strategies or decisions may be "so ill chosen" as to render counsel's overall representation constitutionally defective. *Adams v. Balkcom,* 688 F.2d at 738; *Washington v. Watkins,* 655 F.2d 1346, 1366 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

**2.** We note that the state is not, by any means, ready to concede such prejudice. In written submissions to the court, the state has indicated that it would not think such autopsy results could be conclusive as to the type of weapon used and that, even if they were, autopsy results would not be outcome determinative, since there was sufficient evidence of motive and "ill feelings" to base a conviction.

■ The decision of appellant's counsel not to seek an autopsy to identify the murder weapon was not "ill chosen." It was the result of sound deliberation, and was a reasonable tactical decision. Appellant's defense was built entirely on the theory that the state had failed to prove appellant guilty beyond a reasonable doubt. Appellant's counsel decided that it was better for there to be uncertainty concerning the weapon used than to chance that an autopsy would reveal that a handgun was the murder weapon, thereby confirming the daughter-in-law's testimony. In their arguments to the jury, his defense attorneys played on this uncertainty regarding the murder weapon to establish reasonable doubt in the minds of the jurors. Appellant's counsel also thought that an attempt to exhume the body and perform an autopsy would have been opposed by appellant's ex-wife and daughters, who were also the victim's mother and sisters. Counsel feared that pursuit of an exhumation would have prompted them to reveal to the prosecution very damaging evidence regarding the appellant.

■ Since the decision not to perform the autopsy was a reasonable, tactical one,

appellant fails to meet the ineffective assistance test of *Strickland v. Washington.* Hence, there is no need to ascertain if there was any prejudice by exhuming the body.[3] Nor is there any other constitutional ground involved in this case upon which to base an order for exhumation. Information obtained from the exhumation and autopsy would have bearing only on appellant's guilt or innocence. It is not within the purview of a federal court in a habeas corpus action to receive or aid in the production of new evidence that might bear on the jury's determination of guilt or innocence. Even though the results of an autopsy might, if they were favorable to appellant, entitle him to a new trial, he has no constitutional right to have the body exhumed and an autopsy performed. Without implication of a constitutional right, the federal courts are powerless to act. We are sympathetic to appellant's discovery request. Neither the appellant nor the state is served by this inability to obtain evidence that might well indicate that an innocent person is in prison. However, if relief is to be had, it must be had under Georgia law.[4] It may not come from a federal court. The district court did not abuse its discretion by denying appellant's discovery motion.

**3.** By following the analysis we do here, we do not mean to suggest that courts may never review the "prejudice" prong of *Strickland v. Washington* first, before turning to the "reasonable assistance" prong. Certainly, if the consequences of an attorney's action or inaction are apparent, the court may, and probably should, address the question of prejudice first, since there is no need to judge the attorney's performance if the claimed improper performance had no effect upon the outcome of the case. However, where it is impossible or difficult to know the result of the attorney's action or inaction, there is no need to try to do the impossible or the difficult in the first instance. The present case is of this latter variety. Determining whether there was prejudice here would involve most extraordinary proceedings. Under such circumstances, it would be better to consider the question of adequacy of representation first, postponing an ascertainment of prejudice and invoking the extraordinary proceedings only if it appears that counsel's performance was deficient. *Cf. Strickland v. Washington,* 104 S.Ct. at 2069–70 ("Although we have discussed the per-

formance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed").

**4.** Georgia law appears to provide for such relief under some circumstances. *See, e.g.,* O.C.G.A. § 45–16–45. The state district attorney for the Coweta Judicial Circuit is quoted by appellee's counsel as not being opposed to "any attempted autopsy through state proceedings...." State cooperation in utilizing state procedures to discern facts is not contrary to the state's defense of this habeas corpus action. The state has an interest in defending its court's judgment against claims of constitutional defect, though it may have no interest in opposing further efforts to find facts bearing on the reliability of the fact-finding undergirding a judgment.

## B. *Ineffective Assistance Claims*

As explained above, the district court correctly denied appellant's ineffective assistance claim based on counsel's failure to seek an autopsy. We hold that the court correctly denied his other ineffective assistance claims as well. These other claims also involved tactical decisions, none of which were unreasonable. Counsel failed to object to the validity of the trace metal test or the qualifications of the deputy sheriff who testified concerning the test because the test and the testimony had been admitted at appellant's first trial. Appellant's attorneys felt that, because the second trial was presided over by the same judge and prosecuted by the same state attorney, their objections to the testimony would be overruled. They sought to minimize the damage caused by the unfavorable evidence by allowing it to come in as quickly as possible without any objection. Counsel failed to object to the officer's testimony about appellant's statements following his arrest[5] because they believed the *Miranda* warnings were sufficient and that any objection would have been without merit and overruled. Seeking, again, to minimize the damage of this unfavorable evidence, counsel decided to let it in as quickly as possible without objection.

### III. CONCLUSION

For the foregoing reasons, the orders of the district court are

AFFIRMED.

---

5. The state alleged in the district court that appellant failed to exhaust state remedies with respect to this claim because he never claimed in the state court that counsel was ineffective for failure to object to this particular testimony. The state claimed this created a mixture of exhausted and non-exhausted claims in one federal habeas petition, and thus, under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the petition should be dismissed. The magistrate, to whom the district court assigned the case, found that, although appellant had not presented this particular factual allegation of ineffective assistance to the Georgia courts, the Georgia Supreme Court had made an affirmative finding that petitioner received assistance of counsel, sufficient to satisfy the exhaustion requirement with respect to this allegation. Explained the magistrate,

Respondent has moved to dismiss this petition because petitioner has presented unexhausted claims in his federal habeas corpus petition. Petitioner admits he failed to allege, in support of the ineffectiveness claim, his counsel's failure to challenge introduction of petitioner's confession at trial. However, that allegation is only one of seven, six of which were presented to the state court. The Georgia Supreme Court affirmatively held petitioner received effective assistance of counsel. Therefore, to force petitioner to relitigate his claim of ineffective assistance on this single factual allegation would be futile.

We find no error here. *See Vela v. Estelle*, 708 F.2d 954 (5th Cir.1983).